(No. 3973— ▮▮▮▮▮▮▮▮▮▮▮▮▮

ANNA JENKINS, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 24, 1947.*

MEYER and MEYER, for claimant.

GEORGE F. BARRETT, Attorney General, and C. ARTHUR NEBEL, Assistant Attorney General, for respondent.

BERGSTROM, J.

Claimant, Anna Jenkins, filed her claim on July 15, 1946 alleging that while in the performance of her duties as ward attendant at the Alton State Hospital she was attacked by an inmate on April 15, 1945 and, as a result thereof, she suffered serious and permanent injuries.

At the time of the accident, claimant and respondent were operating under the provisions of the Workmen's Compensation Act of this State, and notice of the accident and claim for compensation were made within the time provided by the Act. The accident arose out of and in the course of claimant's employment.

On April 15, 1945, while claimant was attempting to direct a new patient to her chair, the patient became

violent and severely and repeatedly struck claimant upon her face, throat, chest and body. The patient was a powerful woman, weighing about 250 pounds. After completing her day's work, claimant testified she felt weak and ill, and unsuccessfully tried to locate one of the hospital doctors. She then went home and placed herself in the care of Dr. Baker and stayed in bed for three weeks. After that, for a period of almost a year, it was necessary for her to stay in bed part of each day. During this time she was also treated by other doctors. Dr. James F. McFadden, who qualified as a specialist in nervous and mental diseases, testified that he examined claimant on August 5, 1946 and again on December 13, 1946; that claimant was suffering from a functional nervous disease known as neurosis; that in his opinion it was caused by the trauma she sustained at the time of the accident; that his prognosis as to her eventual cure was not favorable, and that sho would not be able to do any physical work. On cross examination he admitted that claimant's menopause might have been a contributing factor to her present condition. In a lengthy medical report regarding claimant's condition made by Dr. Dan Tucker Miller, which was submitted into evidence by stipulation, he states in his conclusion—

"In addition to the physical impairments above described, this woman gives every evidence of having a very serious neurosis. If it can be reasonably established that she did not suffer from this neurosis prior to the injury, it is my opinion that it has been caused by the accident. If she did have a functional nerve impairment prior to the accident of April 15, 1945 then, of course, the extent of same has been very greatly increased by the accident. Inasmuch as the neurosis has persisted for approximately twenty months, it is also quite well established that this patient will continue to suffer from this type of nerve ailment for months or years to come. Whether or not good treatment will eventually lead to recovery of this functional nerve ailment is uncertain. As to the organic injuries involving the osseous system, these impairments are, of course, permanent."

From the evidence, it would appear that claimant is suffering from a functional nervous disease aggravated by the accident, with the possibility that her menopause was a contributing factor.

The record shows that she was employed by the Bellefontaine Farms as cottage supervisor on June 6, 1946 at a monthly salary of $100.00. Whatever physical incapacity claimant now has, it apparently is partial, and payment of compensation, if any, would be under Sec. 8, Par. D of the Workmen's Compensation Act. As there is no difference between the average amount which she earned before the accident and the average amount which she is now earning, an award cannot be made under the said Sec. 8, Par. D.

Medical bills were submitted as follows:

| | |
|---|---|
| Dr. L. L. Baker | $10.00 |
| Dr. James F. McFadden | 53.00 |
| Dr. George Ives, Clinical Laboratory | 5.00 |

The record does not disclose that these bills or any other medical charges were authorized by respondent, but to the contrary the Department of Public Welfare in their report say "Since Mrs. Jenkins did not report to a physician following her injury, we had no opportunity to examine her and determine the extent of her injury or recommend treatment or administer treatment following the injury, and cannot give additional evidence as to what injury she may have sustained." Apparently claimant elected to employ her own doctors and this being the case, under paragraph (a) Section 8 of the Workmen's Compensation Act, it necessarily must be at her own expense.

The earnings of persons employed in a similar capacity as claimant earned $1,200.00 per year. Her average weekly wage would be $23.08 which would make her compensation rate $11.54 weekly, to which must be added

17½%, her accident having occurred after July 1943, making her total weekly compensation rate $13.56. Claimant is entitled to receive compensation for total temporary disability of $13.56 from April 16, 1945 to June 6, 1946—59 2/7 weeks—or $803.92, from which must be deducted the sum of $460.29 paid claimant for unproductive time, leaving a balance due her for total temporary disability of $343.63.

Floriene Stricker of Alton, Illinois, was employed to take and transcribe the evidence at the hearing before Commissioner Jenkins, and a charge for $15.60 was incurred for this service, which is reasonable and customary.

An award is therefore allowed to the claimant, Anna Jenkins, in the sum of $343.63, all of which has accrued and is payable forthwith.

An award is also made to Floriene Stricker for the sum of $15.60.

This award is subject to the approval of the Governor as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."